UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:01-CV-339-KKC

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,           PLAINTIFF

v.           **OPINION AND ORDER**

WAL-MART STORES, INC.,           DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on certain Recommended Dispositions or Orders filed by the Magistrate Judge and the parties' objections to the same.

**I.**     **Background.**

The Equal Employment Opportunity Commission (the "EEOC") filed this action in August 2001 asserting that, since at least January 1, 1998, the Defendant Wal-Mart has engaged in hiring discrimination based on gender against a class of females at its Wal-Mart Distribution Center No. 6097 in London, Kentucky in violation of 42 U.S.C. § 2000e-2(a)(1).

**II.**     **Magistrate Judge's Order Regarding Scope of Discovery (DE 129).**

The first order by the Magistrate Judge under consideration was issued on January 18, 2007 and related to the proper scope of questions posed during the deposition of Mike Giles, a manager for Wal-Mart. (DE 129). Specifically, the issue before the Magistrate was whether the EEOC could inquire as to events happening outside of the time period of 1998 to February 2005 and whether it could ask questions about the hiring practices at Wal-Mart distribution centers other than the one at issue in this case ("DC 6097").

In his Order, the Magistrate Judge determined that the parties had effectively limited the

liability analysis to the period of 1998 to February 2005. Nevertheless, the Magistrate Judge found that "some inquiry into matters occurring outside the defined period, and. . .outside the geographic limitation of DC 6097, would be proper." For example, the Magistrate Judge determined that questions regarding other time periods and distribution centers would be within the proper scope of discovery if they went to Wal-Mart's knowledge, awareness, or intent related to gender discrimination in hiring decisions for the 1998-2005 time period. The Magistrate Judge further stated that he believed almost all of the questions that Wal-Mart had objected to during the Giles deposition were discoverable.

The EEOC objected to the Magistrate Judge's January 18, 2007 Order, arguing that he exceeded his authority in limiting the temporal scope of the suit. However, pursuant to 28 U.S.C. § 636(B)(1)(A), this Court has referred all discovery disputes to the Magistrate Judge for resolution. The Magistrate Judge's ruling was specifically confined to the scope of discovery in this matter. This Court can modify or set aside the Magistrate Judge's rulings on discovery disputes only if they are "clearly erroneous or contrary to law." *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

By Agreed Order (DE 62), the parties specifically agreed that the Plaintiff's expert reports would cover Wal-Mart's hiring practices from 1998 to February 2005. Further, the parties represented to the Magistrate Judge that they had agreed that Wal-Mart would not produce applications after February 2005. The Magistrate Judge's Order regarding the scope of fact discovery was consistent with the parties' sole agreement regarding its scope.

Further, the Court notes that the Magistrate Judge did not foreclose all discovery relating to Wal-Mart's hiring practices beyond 2005 or all discovery relating to hiring practices at different distribution centers. The Magistrate Judge specifically permitted all such discovery that would relate

to Wal-Mart's knowledge, awareness, or intent, related to gender animus, for the 1998-2005 period. Accordingly, the Court does not find the Magistrate Judge's ruling clearly erroneous.

Further, even under *de novo* review, the Court upholds the Magistrate Judge's ruling. Again, the ruling was consistent with the Agreed Order and the parties' other agreement regarding the scope of discovery. While, in its objections, the EEOC argues that it did not ever intend to limit the proof in this case to the 1998 to February 2005 time period, it agreed to limit the expert reports and applications to that time period. The Magistrate Judge's determination that deposition questions should also be limited to discovery regarding Wal-Mart's knowledge, awareness, or intent, related to gender animus for the 1998-2005 period was accurate.

The EEOC also argues that the Magistrate Judge did not give it an opportunity to be heard. The EEOC never requested a hearing. Further, to the extent that the Magistrate Judge's ruling should be considered "dispositive," the EEOC has received all the process outlined in 28 U.S.C. § 636 (b)(1) (C).

Accordingly, the Court ADOPTS the January 18, 2007 Order of the Magistrate Judge in its entirety and OVERRULES the EEOC's objections to it (DE 131).

> **III.** **Magistrate Judge's Recommendation that this Court Strike Portions of Martell Expert Report (DE 296).**

The next ruling by the Magistrate Judge under consideration is a recommendation (DE 296) that this Court grant Wal-Mart's motion to strike (DE 274) certain portions of the report filed by EEOC Expert, Dr. Richard F. Martell.

The EEOC designated the Martell report as responsive to the report of Wal-mart expert Nancy Combs. In its expert disclosures, Wal-Mart identified Combs as president of a human resources consulting practice in Louisville, Kentucky. Wal-Mart stated that Combs was expected

to testify about "standard practices for employee interviewing, hiring and training." (DE 182). The Combs' report (DE 275 Ex. A) opines that Wal-Mart's written human resources policies and procedures are "consistent with those found in any large company, including distributors" and comply with "federal, state and local laws, anti-discrimination policies, diversity policies, fair employment policies, complaint procedures and remedies for violations." Combs further opines that Wal-Mart's polices are "standard and reasonable and would be found in any well-managed business." Combs states that "Wal-Mart's process fits the recommended system, with a goal of producing the most desirable outcome." Combs opines that "[t]he large number of applicants for any available position could, at times, cause a qualified person to be eliminated."

Wal-Mart argues that portions of Martell's report are not responsive to the Combs report. Specifically, it asks that the Court strike the "portions of Dr. Martell's report addressing gender bias in hiring decisions, on pages 2 [and] 24-32."

On page 2 of his report (DE 275, Ex. B), Martell states that he was retained by the EEOC to "respond to the opinions proffered by defendants' expert, Ms. Nancy[] Combs." He states that Combs offered conclusions that "go beyond her stated assignment in this case including, for example, her opinion that the hiring policies and practices at DC 6097 prevent gender bias in hiring decisions." In support of his assertion that Combs offered opinions beyond her stated assignment, Martell does not cite Combs' report, but instead cites pages 51 to 53, 92-93, 51-58, 52-53, 74-77, and 124-125 of Combs' deposition. Martell states that he will, therefore, also address whether Wal-Mart's hiring policies and practices prevent gender bias.

On pages 24-32, Martell states that Combs "moves well beyond her charge and into the domain reserved for fact-finders when she proffers opinions regarding whether there is gender bias

4

in hiring at Wal-Mart DC 6097." Here, Martell cites pages 117 and 126 of Combs' deposition testimony. Martell states he has seen no evidence that Combs "was asked to make any factual determinations regarding the existence of gender bias in hiring at DC 6097." He states that nonetheless Combs opines that "hiring at DC 6079 is free of gender bias." Martell states he will respond to that opinion by "assessing the vulnerability of Wal-Mart's hiring processes to gender stereotyping." That assessment is contained on pages 24 to 32 of the Martell report.

There is no question that, in her report, Combs does not opine on whether Wal-Mart's hiring practices are actually discriminatory. Both the Magistrate Judge and Martell recognize this. However, as the Magistrate Judge and Martell further noted, Combs did opine on that issue in her deposition. The Magistrate Judge determined that Combs did so, however, only on cross examination, not on direct examination. The Magistrate Judge also noted that Martell's opinion was similar to the opinion of another EEOC expert, Dr. William Bielby who was retained by the EEOC to "determine whether findings from social science research. . . explain the pattern of disparities by gender in hiring for entry-level jobs at 6097."

The Magistrate Judge recommends that the Court limit Combs' testimony to that contained in her report and limit Martell's testimony to the opinions responsive to the Combs report. The Magistrate Judge further recommends that this Court strike the portions of the Martell report addressing whether Wal-Mart's hiring process prevents or prevented gender bias or stereotyping at DC 6097.

The EEOC objects to the Recommended Disposition, arguing that the Magistrate Judge 1) failed to fully and properly assess the responsiveness of the Martell report; 2) improperly denied it the right to fully rebut Wal-Mart's proposed expert testimony; 3) failed to provide sufficient

guidance with respect to the proposed recommendation; and 4) failed to make a ruling based on a full record.

As to the EEOC's first argument, the EEOC argues that pages 24-32 of the Martell report should be permitted because, in those pages, Martell does not even intend to rebut an opinion on existence of bias but instead simply provides "a responsive critique of Wal-Mart's selection and training processes." (DE 299 at 8). However, on page 24, Martell specifically states that this portion of his report will address Combs' opinion "that there is no gender bias in hiring decisions at Wal-Mart DC 6097." He also states that Combs "moves well beyond her charge. . . when she proffers opinions regarding whether there is gender bias in hiring at Wal-Mart DC 6097." He then states he will respond to that opinion by "assessing the vulnerability of Wal-Mart's hiring processes to gender stereotyping. . . ."

The Combs report does not contain an opinion on whether there is gender bias in the hiring decisions at Wal-Mart. Accordingly, Combs' testimony on this subject will not be admissible. Likewise, the portions of the Martell report which are explicitly directed at rebutting that opinion will be stricken. This consists of the second paragraph on page 2 of the report; pages 24 - 32, beginning with the statement on page 24, "**Ms. Combs Opines that There is No Gender Bias in Hiring Decisions At Wal-Mart DC 6097**" until the Conclusions section on page 32; and the Fourth, Fifth, and Sixth Conclusions on page 33.

The EEOC also asserts that the Magistrate Judge's recommendation impermissibly prohibits it from rebutting Combs' testimony. This is incorrect. The Magistrate Judge's recommendation limits Combs' testimony to that covered by her report and specifically permits the EEOC to rebut that report with Martell's report and testimony. The Magistrate Judge correctly determined,

6

however, that the portions of the Martell report that deal with gender bias in Wal-Mart's hiring practices go beyond the Combs report and, thus, should be stricken. Further, the EEOC has already proffered evidence of gender bias in Wal-Mart's hiring practices through the testimony and report of Dr. Bielby. Accordingly, Martell's opinion in this regard is not necessary.

The EEOC also argues that the Magistrate Judge's recommendation did not specifically state what portions of Dr. Martell's report should be stricken. To the extent that the recommendation needed clarification in this regard, it is provided above. The EEOC also complains that the Magistrate Judge did not explain what specific portions of Combs' deposition testimony should be excluded. The Magistrate Judge recommended that Combs not be permitted to testify regarding whether there is or was gender bias in Wal-Mart's hiring practices. The Court adopts that recommendation. If the EEOC seeks a ruling at this point as to what specific portions of Combs' deposition testimony should be excluded, the Court suggests that it file a motion to that effect with a copy of the deposition transcript specifically stating which portions of the deposition testimony should be excluded in accordance with the Magistrate Judge's recommendation and this opinion.

Finally, the EEOC argues that the Magistrate Judge should have conducted a hearing prior to issuing the recommendation. This objection has no merit. First, the EEOC never requested a hearing. Second, in issuing the recommendation, the Magistrate Judge complied with the procedures outlined in 28 U.S.C. § 636 (b)(1)(C).

For all these reasons, the Magistrate Judge's Recommended Disposition (DE 296) is adopted in its entirety as the opinion of this Court with the clarification above regarding the portions of the Martell report that will be stricken.

### IV. Magistrate Judge's Recommendation that Court Strike Portions of Freeman Supplemental Report. (DE # 315).

The final Recommended Disposition of the Magistrate Judge under consideration by the Court deals with a report by Wal-Mart expert James Freeman. The EEOC moved the Court to strike portions of Freeman's supplemental expert report, arguing that they exceeded the limitations set by the Magistrate Judge in an August 29, 2008 Order.

Wal-Mart identified Freeman as an expert responsive to the EEOC statistical expert Dr. Burt Barnow who had concluded that there was a statistical disparity in hiring by sex at Wal-Mart's London Distribution Center. Prior to Wal-Mart's submission of the Freeman report, it raised the issue of its access to certain data underlying Dr. Barnow's report. Wal-Mart contended it needed that data to make a full response to Dr. Barnow's report. The underlying data was contained on a database that has been denominated the "D-Base database." The D-Base database was created for the EEOC by a Dr. Ibrahim Imam, who had helped the EEOC compile data related to Wal-Mart DC 6097 job applicants for the relevant time period.

The Magistrate Judge addressed Wal-Mart's access to the D-Base database on multiple occasions. The Magistrate Judge extended the due date for Freeman's report from January 7, 2008 to April 7, 2008 and stated that, if Wal-Mart should assert that its lack of access to the D-Base materials prevented a complete report, the Magistrate Judge would nonetheless expect Wal-Mart to submit whatever portion of the report that could be completed. (DE 208).

Wal-Mart submitted Freeman's initial report on April 7, 2008 but continued to raise the issue of its lack of access to the D-Base data. On May 2, 2008, the Magistrate Judge ordered Wal-Mart to file the portions of the Freeman report discussing the D-Base database and an explanation of Freeman's proposed use and need for access to the D-base database. (DE 235).

On May 12, 2008, Wal-Mart filed portions of Freeman's report "regarding Professor Freeman's need for access to the D-Base database and anticipated supplementation." (DE 241). In one portion, Freeman states that the primary problem in testing Dr. Barnow's database is that most of the data Dr. Barnow uses is "set up in a 'yes/not yes' format." This means, explains Freeman, that the person inputting the data into the database indicates a "yes" response when the answer is yes and, for any other response, indicates "not yes." Freeman states, "[t]he only way for me to check for all the data problems hidden in the 'Yes/Not Yes' response is to have access to Dr. Imam's original data set in a readable format . . . Unfortunately, I have not been able to obtain this data. I would like to reserve the right to supplement my analysis should I subsequently receive access to Dr. Imam's original data set in a readable form."

On August 29, 2008, the Magistrate Judge ordered that Wal-Mart file any supplemental report of Freeman by November 17, 2008. The Magistrate Judge further ordered that the supplemental report "would properly encompass *only* the D-Base issues addressed by the Court in the interval since the original deadline for Freeman's report." (DE 272).

After Wal-Mart's production of Freeman's supplemental report, the EEOC moved to strike the supplementation, arguing that it exceeded the scope of the Magistrate Judge's order. Specifically, the EEOC argued that the supplemental report improperly included 1) new sections titled "Undisclosed Involvement of Compupacific in Developing Database" and "Additional Evidence of Excessive Involvement of EEOC in Preparing Dr. Barnow's Database Per Recently Produced E-Mails;" and 2) a database of employees who were transferred created by Freeman from Wal-Mart applicant materials which Freeman compares to Dr. Barnow's database.

The Magistrate Judge recommends that this Court strike the portion of the Freeman

9

supplemental report comparing Dr. Barnow's transfer data to Wal-Mart's raw applicant data . The Magistrate Judge determined that all other portions of the supplemental report are proper. In reaching that conclusion, the Magistrate Judge determined that the Freeman supplementation consisted of three categories.

The first category identified by the Magistrate was an expanded criticism of the involvement of multiple parties in the creation of the database upon which Dr. Barnow relied in formulating his opinion. The Magistrate Judge determined this supplementation was justified by the EEOC's late production of correspondence indicating involvement by the firm "Compupacific" in retrieval of data used by Barnow and further demonstrating the EEOC's role in the database construction.

The second category of the supplementation identified by the Magistrate Judge was criticism of the differences between the databases used by Dr. Barnow and Dr. Imam. The Magistrate Judge determined that this supplementation was justified because it could not have been formulated until Wal-Mart had access to all of the D-Base Materials.

The third category was criticism of the accuracy of Dr. Barnow's data concerning employee applications to transfer at DC 6097. The Magistrate Judge determined that this supplementation was justified to the extent that its formulation depended on access to the D-Base Materials. However, the Magistrate Judge determined that the portion of the supplementation comparing Dr. Barnow's transfer data to Wal-Mart's raw applicant data was improper. The Court determined that Freeman could have conducted this analysis anytime because Wal-Mart possessed the raw applicant data – such as its own application and transfer records – since the beginning of the case.

Wal-Mart objects to the Magistrate Judge's Recommended Disposition to the extent that it recommends that the Court strike the portion of the supplementation comparing Barnow's transfer

data to Wal-Mart's raw application data. Wal-Mart argues that Freeman would have had no indication that he should compare Dr. Barnow's transfer data to Wal-Mart's raw applicant data until after he received access to the D-Base. Wal-Mart argues that it was not until after Freeman compared the D-Base materials with Dr. Barnow's final database that he realized the large discrepancy between the data sets. This discrepancy then provoked him to undertake a comparison with Wal-Mart's raw transfer applicant data and Dr. Barnow's database. Wal-Mart argues that, while Freeman *could* have compared these two data sets without access to the D-Base materials, he could not practically justify the time and expense involved without a prior indication that the transfer applicant data was inconsistent. Wal-Mart argues there was no such prior indication until it had access to the D-Base materials.

The Court will undertake a *de novo* review of Wal-Mart's objections. In his recommendation, the Magistrate Judge correctly noted that Freeman recognized alleged inaccuracies in Barnow's data regarding transfers at the time of his initial report and made multiple references to such inaccuracies and their importance. In its objections, Wal-Mart concedes that Freeman did note such discrepancies but argues that he did not believe at the time of his initial report that the discrepancies were large enough to warrant further review. However, after reviewing the report, the Court cannot agree that Freeman had no cause to undertake further review of the transfer data at the time he formulated that report.

Accordingly, the Magistrate Judge's Recommended Disposition is ADOPTED in its entirety as the opinion of this Court and portions of the Freeman report should be STRICKEN as indicated by the Magistrate Judge in the attachment to his Recommended Disposition.

V.   **CONCLUSION.**

For all the above reasons, the Court hereby ORDERS as follows:

1)   the Court ADOPTS the January 18, 2007 Order of the Magistrate Judge (DE 129) in its entirety and DENIES the EEOC's objections to it (DE 131);

2)   the Magistrate Judge's November 13, 2008 Recommended Disposition (DE 296) is adopted in its entirety as the opinion of this Court with the following clarification.  The portion of the Martell report that SHALL BE STRICKEN consists of: The second paragraph on page 2 of the Martell report; pages 24 - 32, beginning with the statement on page 24, "**Ms. Combs Opines that There is No Gender Bias in Hiring Decisions At Wal-Mart DC 6097**" until the Conclusions section on page 32; and the Fourth, Fifth, and Sixth Conclusions on page 33.

3)    Wal-Mart's Motion to Strike (DE 274) is GRANTED; and

4)    the Magistrate Judge's January 23, 2009 Recommended Disposition (DE 315) is ADOPTED in its entirety as the opinion of this Court and portions of the Freeman report SHALL BE STRICKEN as indicated by the Magistrate Judge in the attachment to his Recommended Disposition.

Dated this 14th day of August, 2009.



Signed By:
*Karen K. Caldwell*  KKC
**United States District Judge**