UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:01-CV-339-KKC

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,            PLAINTIFF,

v.            **OPINION AND ORDER**

WAL-MART STORES, INC.,            DEFENDANT.

\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on the Motion for Summary Judgment filed by the Defendant, Wal-Mart Stores, Inc. (DE 409) and two related motions (DE 420 & DE 433).

**I.**      **FACTS.**

In its Complaint, the United States Equal Employment Opportunity Commission (the "EEOC") asserts that, since at least January 1, 1998, Wal-Mart engaged in unlawful employment practices within Wal-Mart Distribution Center No. 6097 ("DC 6097) in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000e-2(a)(1). (DE 1, Complaint, ¶ 7).

That statute prohibits an employer from failing or refusing to hire a woman or from otherwise discriminating against her because of her gender.

In October 1998, Janice Smith, who was then an employee at Wal-Mart's retail store in London, Kentucky, was denied a transfer to DC 6097 as a freezer department "order filler." (DE 409, Mot., Ex. 1; DE 444, Response, Ex. 111). She filed a charge with the EEOC asserting that Wal-Mart discriminated against her because of her gender when her transfer application was denied. (DE 409, Mot. Ex. 1; DE 444, Response, Ex. 135).

The EEOC notified Wal-Mart of the charge, conducted an investigation and determined that

evidence supported Smith's allegations and that there was evidence that a class of women were not hired as order fillers because of their gender. (DE 444, Response, Ex. 132).

After an unsuccessful attempt at conciliation, the EEOC filed this action on behalf of Smith and the class asserting that they were subject to disparate treatment based on gender when Wal-Mart failed to hire them into vacant positions at DC 6097. (DE 1, Complaint, ¶ 7).

In its Motion for Summary Judgment, Wal-Mart argues that the Court should dismiss all or a portion of the EEOC's claim.

**II.   ANALYSIS.**

**A.   JURISDICTION.**

Wal-Mart first argues that this Court only has jurisdiction over the charge that Wal-Mart discriminated against transfer applicants seeking the position of "order filler." The EEOC, on the other hand, argues that the claim that Wal-Mart discriminated against *all* female applicants in hiring for *all* entry level positions at DC 6097 is properly before the Court.

In support of its argument, Wal-Mart cites *EEOC v. Bailey Co. Inc.,* 563 F.2d 439 (6th Cir. 1977)(disapproved of on other grounds by *Christianburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)). In that case, the court stated, "[t]he clearly stated rule in this Circuit is that the EEOC's complaint is 'limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'" *Id*. at 446.

The court stated that there were two reasons for this rule: 1) the individuals who file the EEOC complaints are not trained legal technicians; and 2) the civil action is "much more intimately related" to the EEOC investigation than to the charge which simply triggers the EEOC investigation and conciliatory procedures, without which there can be no civil complaint. *Id*.

"The administrative filing requirement that a Title VII plaintiff exhaust her administrative remedies, while not jurisdictional, is a necessary prerequisite to filing a discrimination suit in federal court." *Nelson v. General Elec. Co.*, 2 Fed. Appx. 425, 427-28 (6th Cir. 2001) (citing *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir.1992)).

In filling out her charge-of-discrimination form with the EEOC, Smith checked the box indicating her cause of discrimination was based on "sex." (DE 444, Response, Ex. 135). The civil complaint in this case also alleges sexual discrimination and only sexual discrimination. Thus, this is not a case where the EEOC complaint alleges, for example, only racial and sexual discrimination and then the civil complaint adds religious discrimination as in *Bailey Co.* Similar issues were presented in *Leigh v. Bureau of State Lottery*, 876 F.2d 104 (6th Cir. 1989) and *Mohamed v. Air Serv Corp.*, 2005 WL 1868791 (E.D. Ky. 2005).

Moreover, the EEOC charge-of-discrimination form alleges that the discriminatory acts by Wal-mart consisted of a "failure to hire." Likewise the civil complaint alleges "failure to hire." Thus, this is not a case where the civil complaint alleges different kinds of discriminatory acts than the initial EEOC complaint alleged as was the case in *Nelson*.

In determining the claims that the EEOC charge should reasonably prompt the EEOC to investigate, the Court must "construe the administrative complaint liberally so as to encompass all charges reasonably expected to grow out of the charge of discrimination." *Nelson*, 2 Fed. Appx. at 428 (internal quotations and citation omitted). Smith's EEOC complaint alleging sexual discrimination in hiring at DC 6097 would have reasonably prompted an investigation into sexual discrimination against all applicants in hiring for all entry level positions at DC 6097.

Wal-Mart asserts in its Motion that the EEOC did not *actually* investigate sexual

3

discrimination in hiring for all entry level positions by applicants at DC 6097 but instead focused only on the order filler position. But the relevant inquiry is not the scope of the *actual* investigation by the EEOC. The relevant inquiry is the scope of the investigation that the EEOC charge would have reasonably prompted. *See Scott v. Eastman Chemical Co.*, 275 Fed. Appx. 466, 471 (6th Cir. 2008). "Plaintiffs are not be penalized if the EEOC investigation should have been larger in scope than it actually was." *Id*. (citing *Dixon v. Ashcroft*, 392 F.3d 212, 219 (6th Cir. 2004)). *See also Schnellbaecher v. Baskin Clother Co.*, 887 F.2d 124, 127-28 (7th Cir. 1989); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3rd Cir. 1984); *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280, 1281 n.9 (5th Cir. 1994); *Johnson v. N.T.I Division of Colorado Springs Circuits*, 898 F.Supp. 762, 767 (D. Col. 1995).

Furthermore, the only conclusion that can be drawn from the evidence in the record is that the investigation was not limited to transfer applicants seeking the position of order filler. The EEOC's Determination letter stated that "[e]vidence obtained during the investigation supports the Charging Party's allegations" that she was denied a transfer because of her sex. It further stated that "there is evidence that females as a class were not hired as Order Fillers because of their sex in violation of Title VII." (DE 444, Response, Ex. 132).

Further, the EEOC attempted conciliation on behalf of six women in addition to Janice Smith. The Court has reviewed the application packets for five of those women that were attached to the conciliation agreement and does not find any indication that they were only transfer applicants or that they sought only order filler positions. (DE 444, Response, Ex. 128).

Accordingly, even if the relevant inquiry were the scope of the actual EEOC investigation, the evidence indicates that the EEOC actually investigated sexual discrimination in hiring of all

applicants for positions other than order filler at DC 6097.

Accordingly, Wal-Mart's Motion for Summary Judgment will be denied to the extent that it argues that this Court lacks jurisdiction over the entirety of the EEOC's claim or that any portion of the claim is improperly before the Court for failure to exhaust administrative remedies.

### B.   PRIMA FACIE CASE.

Wal-Mart next argues that the EEOC's prima facie case fails for various reasons. In resolving these arguments, it is helpful to understand a little more about the nature of this case.

The EEOC brings this claim pursuant to Section 707 of Title VII, 42 U.S.C. § 2000e-6, which allows the federal government, through the EEOC, to bring a civil action directly against an employer charging systematic discrimination against a protected group.

In these cases, the government is required to demonstrate that there exists "a pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title VII]...." 42 U.S.C. § 2000e-6(a).

To do so, the EEOC must prove more than the "mere occurrence of isolated, 'accidental' or sporadic discriminatory acts." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977). Rather, the EEOC must show that discrimination was the employer's "standard operating procedure" and "the regular rather than the unusual practice." *Teamsters*, 431 U.S. 324, 336 (1977). *See also Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874-76(1984). Such an action focuses on whether there exists a "pattern of discriminatory decisionmaking." *Cooper*, 467 U.S. at 876.

The plaintiffs may establish a prima facie case of pattern or practice disparate treatment by the use of statistics which show a gross disparity in the treatment of workers based on a protected

characteristic. *Anderson v. Douglas & Lomason Co., Inc*., 26 F.3d 1277, 1285 (5th Cir.1994). The plaintiffs may bolster their case by introducing historical, individual, or circumstantial evidence. *Id*. The employer may then rebut the plaintiffs' prima facie case by showing that the plaintiffs' statistics are inaccurate or insignificant, or by providing a nondiscriminatory explanation for the apparent discrimination. *Id*.

If the employer fails to rebut the government's prima facie case, the resulting finding of a discriminatory pattern or practice gives rise to an inference that all employees subject to the policy were its victims and are entitled to appropriate remedies. *See Teamsters*, 431 U.S. at 362.

1) **Wal-Mart's Knowledge of Applicant Gender.**

Wal-Mart first argues that the EEOC cannot establish a prima facie case of disparate treatment because it cannot show that Wal-Mart knew the sex of the applicants it rejected for hire. Wal-Mart presents evidence that its application does not include a question about the applicant's gender. Wal-Mart also presents evidence that the determination of whether an applicant will be interviewed at Wal-Mart is based on the application alone. The EEOC's statistical expert opines that from 71 to 82 percent of female applicants, depending upon the relevant time period, were rejected at this pre-screening stage.

In response, however, the EEOC has presented evidence through the declaration of Lindsay Williams (DE 444, Response, Ex. 137) that a large majority of the class members in this action have "common" female names such as Angela, Melissa, Tammy, Mary, Brenda, etc. This at least creates an issue of fact as to whether Wal-Mart employees could discern the gender of applicants from the completed applications even though the gender was not specifically indicated on the application. Wal-Mart is free to produce evidence that its employees did not, in fact, know the gender of its

applicants regardless of the names on the application and the jury can decide the issue.

### 2) Elimination of Random Chance as the Reason for the Statistical Disparity.

The EEOC has designated Dr. Burt S. Barnow as its statistical expert. In his expert report, Dr. Barnow concludes that, for the relevant time periods, "men were more likely to receive an offer than women after controlling for information available on the application, and these results are statistically significant and highly unlikely to have occurred by chance."

Wal-Mart argues that the EEOC does not establish a prima facie case of disparate treatment through Dr. Barnow's report for several reasons. First, Wal-Mart argues that Dr. Barnow is unable to *eliminate* the most common non-discriminatory explanations for the disparity in treatment of females at DC 6097. More specifically, Wal-Mart argues that Dr. Barnow admits he cannot eliminate "randomness" as an explanation for the disparity in male and female offer rates.

Wal-Mart is correct that, to permit an inference that a defendant discriminated against individual members of a class, the plaintiffs' statistical evidence "must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990)(citing *Segar v. Smith*, 738 F.2d 1249, 1274 (D.C. Cir. 1984)).

The next issue, then, is how does a plaintiff statistically *eliminate* the most common nondiscriminatory explanations for the disparity. Specifically, in this case, the issue is how does the EEOC show, through statistics, that "randomness" cannot be the explanation for the disparity between the offer rates to men and women applicants at DC 6097.

The EEOC points the Court to the following passage from *Segar*, which the Sixth Circuit relied upon in *Barnes*:

> The notion of statistical significance addresses directly the question whether an inference of discrimination is warranted. Statistical significance is a measure of the probability that the outcome of a statistical analysis would have occurred by chance: The lower the probability that the observed outcome could have occurred by chance, the stronger the inference of discrimination that can be drawn from the data. For example, a finding that a study is significant at the .10 level indicates that the odds are one in ten that the result could have occurred by chance, and a finding of significance at the .05 level indicates that the odds are one in 20 that the result could have occurred by chance. Although the law has not set any precise level at which statistical significance can be said to be sufficient to permit an inference of discrimination, social scientists usually accept a study that achieves statistical significance at the .05 level. D. Baldus & J. Cole, supra, at 297; cf. F. Mosteller, R. Rourke & G. Thomas, Probability With Statistical Applications 310 (2d ed. 1970). In other words, a study is found significant-and the hypothesis of chance is rejected-when there exists at most a one in 20 possibility that the observed result could have occurred by chance. Several courts have adopted the .05 level as sufficient to support an inference of discrimination in Title VII cases.

*Segar*, 738 F.2d at 1282.

For the 1998 to 2001 time period, Dr. Barnow concluded that the chance of the gender disparity occurring by chance was less than .0001 or one in ten thousand. For the 2001 to 2004 time period, Dr. Barnow opined that the chance of the gender disparity occurring by chance was .0058 or roughly one in 500. (DE 444, Response at 43 & Ex. 120, Barnow Supp. Report Ex. B4, B5)

Wal-Mart asserts that, in his deposition, Dr. Barnow conceded he cannot rule out randomness as a cause of the disparity. However, in the portion of the deposition that Wal-Mart cites as support for this assertion, he does not appear to state that randomness is or could be the cause for the statistical disparity in male and female offer rates. Instead, he appears to be explaining why other variables for which he controlled in his analysis do not predict whether an applicant will be hired. (DE 409, Mot. for Summ. J. Ex. E., Barnow Dep. at 343-345).

### 3) Reliability of the EEOC's Statistical Evidence.

The remaining arguments regarding the EEOC's statistical evidence go to its reliability. Wal-Mart argues that 1) Dr. Barnow's analysis does not accurately determine an applicant's probability of being hired; 2) Dr. Barnow improperly aggregated hiring data for various years; 3) the database upon which Dr. Barnow relied is inaccurate; and 4) Dr. Barnow's analysis ignores critical variables.

The reliability of Dr. Barnow's analysis was thoroughly and specifically briefed in motions to exclude the testimony of both Dr. Barnow and Wal-Mart's responsive expert James Freeman based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Court has recently conducted four days of *Daubert* hearings on those and other motions and heard testimony from Dr. Barnow and Freeman and arguments by the parties.

For reasons stated by separate opinion, the Court has concluded that Dr. Barnow's testimony is admissible and has addressed each of Wal-Mart's arguments enumerated above. Given that ruling, the EEOC has established a prima facie case of disparate treatment. "Where gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination." *Hazelwood School District v. United States*, 433 U.S. 299, 307-08 (1977).

The remaining arguments in Wal-Mart's Motion for Summary Judgment depend upon this Court finding that Dr. Barnow's testimony is so unreliable that it should not be presented to a jury. Wal-Mart argues that the EEOC cannot make a prima facie case based on the testimony of its expert William Bielby or on the anecdotal evidence. These arguments are moot given the admission of Dr. Barnow's testimony.

### III.    CONCLUSION.

For all these reasons, the Court hereby ORDERS as follows:

1)    Wal-Mart's Motion for Summary Judgment (DE 409) is DENIED;

2)    the EEOC's Motion to Exclude Certain Evidence Improperly offered by Wal-Mart in Support of Summary Judgment (DE 420) is DENIED.  Any objections to the evidence Wal-Mart has relied on in support of its Motion for Summary Judgment should have been made in the EEOC's 75-page response brief.  Further, the Court has not relied on the DVD at issue in ruling on the Motion for Summary Judgment. Likewise, many of the allegedly unsupported facts to which the EEOC objects have no bearing on the Court's finding on summary judgment.  Finally, when either party has asserted that any material facts are "undisputed, " "admitted," "conceded," etc., the Court has not accepted any such assertions without citation and has reviewed the citation when given to determine whether the record has been accurately characterized; and

3)     Wal-Mart's Motion to File Sur-Reply (DE 433) is DENIED.

Dated this 12th day of February, 2010.



Signed By:
*Karen K. Caldwell*
United States District Judge