UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:01-CV-339-KKC

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,                              PLAINTIFF,

v.                                      **OPINION AND ORDER**

WAL-MART STORES, INC.,                                                 DEFENDANT.

\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on Wal-Mart's Motion to Exclude the Proposed Testimony of EEOC Expert William T. Bielby (DE 345). .

**I.      BACKGROUND.**

In its Complaint, the United States Equal Employment Opportunity Commission (the "EEOC") asserts that, since at least January 1, 1998, Wal-Mart engaged in unlawful employment practices within Wal-Mart Distribution Center No. 6097 ("DC 6097) in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000e-2(a)(1).  (DE 1, Complaint, ¶ 7).

That statute prohibits an employer from failing or refusing to hire a woman or from otherwise discriminating against her because of her gender.

The EEOC brings this claim pursuant to Section 707 of Title VII, 42 U.S.C. § 2000e-6, which allows the federal government, through the EEOC, to bring a civil action directly against an employer charging systematic discrimination against a protected group.

In these cases, the government has to demonstrate that there exists "a pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title VII]...." 42 U.S.C. § 2000e-6(a).

To do so, the EEOC must prove more than the "mere occurrence of isolated, 'accidental' or sporadic discriminatory acts." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324,

336 (1977). Rather, the EEOC must show that discrimination was the employer's "standard operating procedure" and "the regular rather than the unusual practice." *Teamsters*, 431 U.S. 324, 336 (1977). *See also Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874-76(1984). Such an action focuses on whether there exists a "pattern of discriminatory decisionmaking." *Cooper*, 467 U .S. at 876.

The plaintiffs may establish a prima facie case of pattern or practice disparate treatment by the use of statistics which show a gross disparity in the treatment of workers based on a protected characteristic. *Anderson v. Douglas & Lomason Co., Inc*., 26 F.3d 1277, 1285 (5th Cir.1994). The plaintiffs may bolster their case by introducing historical, individual, or circumstantial evidence. *Id*. The employer may then rebut the plaintiffs' prima facie case by showing that the plaintiffs' statistics are inaccurate or insignificant, or by providing a nondiscriminatory explanation for the apparent discrimination. *Id*.

If the employer fails to rebut the government's prima facie case, the resulting finding of a discriminatory pattern or practice gives rise to an inference that all employees subject to the policy were its victims and are entitled to appropriate remedies. *See Teamsters*, 431 U.S. at 362..

The EEOC proffered Dr. Burt S. Barnow as its statistical expert. Specifically, Dr. Barnow was hired to analyze data on hiring by Wal-Mart from January 1, 1998 to present to determine if there is a statistically significant disparity in hiring by sex at DC 6097 after controlling for relevant factors. The data included 25,000 applicant files and hundreds of thousands of pages.

In his report, Dr. Barnow states that the statistical approach he used "to control for factors that might affect hiring decisions is logit analysis, sometimes referred to as logistic regression analysis." (DE 359 at 13). Dr. Barnow concludes that:

> After controlling for relevant variables available in the application, I conclude that the probability a woman will receive a job offer is less than the probability an identically qualified man will receive an offer in [the 1998-2001 and 2002-04 time periods]; the

2

estimated disparities are highly statistically significan[t], substantially exceeding the standards required for evidence in cases of this nature and are thus very unlikely to have arisen by chance alone.

By prior order, this Court determined that Dr. Barnow was qualified, that his testimony was sufficiently reliable to present to a jury, and that his testimony was relevant to this action.

The EEOC also proffers the expert testimony of Dr. William T. Bielby, a sociologist. The EEOC retained Dr. Bielby "to determine whether findings from social science research. . . explain the pattern of disparities by gender in hiring for entry-level jobs" at the distribution center. The EEOC summarizes Dr. Bielby's findings as follows:

> Dr. Bielby opined that Wal-Mart's highly discretionary selection system with minimal oversight coupled with an overwhelmingly male workforce and the physical nature of warehouse jobs invites gender stereotyping and bias against female applicants. He also opined that Wal-Mart's EEO policies and practices and manager training were insufficient to minimize stereotyping and gender bias. Dr. Bielby concluded that gender stereotyping offered a cogent explanation for the disparity in hiring between males and females at DC 6097 and that changes beginning in 2002, including changes in the hiring process and the filing of the EEOC's sex discrimination lawsuit resulted in noticeable, but not complete, diminution in the gender-based hiring disparity.

Wal-Mart moves to exclude Dr. Bielby's testimony. The Court conducted a hearing on the motion at which Dr. Bielby testified and counsel presented arguments.

**II.     ANALYSIS.**

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Court clarified that expert testimony is admissible only if it is both

3

relevant and reliable. *Daubert*, 526 U.S. at 589; *Kumho Tire*, 526 U.S. at 147.

As to reliability, a witness must first establish that he is qualified on the basis of "knowledge, skill, experience, training, or education." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)(citing Fed. R. Evid. 702). The Court then must "determine whether the principles and methodology underlying the testimony itself are valid." *Id*. The Court is not to "second guess the validity of conclusions generated by otherwise valid methods, principles, and reasoning." *Id*.

As to relevancy, "[t]his requirement has been interpreted to mean that scientific testimony must 'fit' the facts of the case, that is, there must be a connection between the scientific research or test result being offered and the disputed factual issues in the case in which the expert will testify." *Id*. at. 578.

The party proffering the expert testimony must prove its reliability and relevancy by a preponderance of the evidence. *Id*. The Court is primarily concerned with the relevance of Dr. Bielby's testimony. The EEOC must establish that the defendant "intentionally discriminated" against female applicants on the basis of gender. *Daniels v. Board of Educ. of Ravenna City School Dist.*, 805 F.2d 203, 206-07 (6th Cir. 1986).

Dr. Bielby opines that the London distribution center "has an overwhelmingly male-dominated workforce, and is perceived as such by those who work there." Thus, opines Dr. Bielby, "it meets the criteria for a sex-labeled job." Thus, continues Dr. Bielby, "gender schema are likely to have an influence on hiring decisions."

Dr. Bielby explains that "gender schema" are gender stereotypes. He explains that gender stereotypes are "socially shared beliefs about the characteristics or attributes of men and women in general that influence our perceptions of individual men and women." Dr. Bielby further explains that "[w]ithout necessarily realizing it, perceivers tend to selectively process information about individuals that is consistent with group stereotypes, while inhibiting information that is inconsistent with

4

stereotypes."

The Court will exclude Dr. Bielby's testimony as irrelevant to this matter. The Court recognizes that gender stereotyping can be admissible evidence of gender discrimination. For example, in *Price Waterhouse v. Hopkins*, the expert testified that the defendant's partnership selection process was likely influenced by "overtly sex-based comments of partners." 490 U.S. 228, 235-36 (1989). The plurality specifically noted that "a number of the partners' comments showed sex stereotyping at work." *Id*. at 251. In that context, the plurality found evidence of sex stereotyping to be relevant to intentional discrimination.

Here, however, Dr. Bielby's report points to no evidence of intentional actions by decision makers based on gender stereotyping. Instead, Dr. Bielby examines the composition of the distribution center's workforce and Wal-Mart's hiring procedures and determines that it is the kind of environment where gender stereotyping can occur. However, Dr. Bielby's testimony makes clear that gender stereotyping does not even necessarily include intentional discrimination. Instead, gender stereotyping can occur subconsciously when individuals – "without necessarily realizing it" – inhibit information that is inconsistent with the gender stereotype. Thus, Dr. Bielby provides no evidence of intentional discrimination at the distribution center.

At the hearing of this matter, the EEOC indicated that it offers Dr. Bielby's testimony to establish that gender stereotyping is a "plausible explanation" for the statistical disparity. However, the EEOC must establish that intentional discrimination is the cause for the disparity. As stated, according to Dr. Bielby, gender stereotyping does not necessarily include intentional discrimination. Further, to the extent that the EEOC proffers Dr. Bielby's testimony as evidence that intentional discrimination is plausible, his testimony is not necessary. Dr. Barnow's statistical evidence permits an inference that intentional discrimination occurred.

Finally, Dr. Bielby's testimony is more prejudicial than probative and presents a risk of confusion. He indicates that gender stereotyping exists in all facets of life. Thus, the jury may well presume such stereotyping existed at Wal-Mart and require Wal-Mart to provide evidence that it did not exist at the distribution center. The burden, however, is on the plaintiff to prove that intentional discrimination occurred at this particular distribution center, not just that gender stereotyping or intentional discrimination is prevalent in the world. Dr. Bielby does not opine on whether intentional discrimination occurred at the distribution center.

For all these reasons, the Court hereby ORDERS as follows:

1) Wal-Mart's Motion to Exclude the Proposed Testimony of EEOC Expert William T. Bielby (DE 345) is GRANTED; and

2) Because Wal-Mart retained P. Richard Jeanneret to respond to Dr. Bielby, Jeanneret's testimony is now unnecessary. Accordingly, the EEOC's Motion to Exclude Jeanneret's testimony (DE 342) is DENIED as moot.

Dated this 16th day of February, 2010.

Signed By:
*Karen K. Caldwell*  KKC
**United States District Judge**