UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:01-CV-339-KKC

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,                 PLAINTIFF

v.                          **OPINION AND ORDER**

WAL-MART STORES, INC.,                                               DEFENDANT

\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on the EEOC's Motion to Enforce Consent Decree (DE 670). For the following reasons, the motion will be denied.

**I.      BACKGROUND.**

In its Complaint, the United States Equal Employment Opportunity Commission (the "EEOC") asserted that, since at least January 1, 1998, Wal-Mart engaged in unlawful employment practices within Wal-Mart Distribution Center No. 6097 ("DC 6097) in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000e-2(a)(1). (DE 1, Complaint, ¶ 7).

That statute prohibits an employer from failing or refusing to hire a woman or from otherwise discriminating against her because of her gender.

The EEOC brought a claim pursuant to Section 707 of Title VII, 42 U.S.C. § 2000e-6, which allows the federal government, through the EEOC, to bring a civil action directly against an employer charging systematic discrimination against a protected group. In these cases, the government has to demonstrate that there exists "a pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title VII]...." 42 U.S.C. § 2000e-6(a). Such an action focuses on whether there exists a "pattern of discriminatory decisionmaking." *Cooper v. Federal*

*Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984).

This matter was set for trial to begin March 1, 2010. However, on February 26, 2010, the parties jointly moved for entry of a Consent Decree which they represented was intended to and did resolve all matters in dispute between them. (DE 666). The Court granted that motion, entered the Consent Decree (DE 669), and canceled the jury trial. Pursuant to Section 1102 of the decree, this Court retained jurisdiction of this action for five years solely to enforce the Consent Decree.

The EEOC now charges that Wal-Mart has violated the Consent Decree in two ways. First, the EEOC charges that Wal-Mart has to date not hired class members as it was required to do under Section 302 of the decree. Second, the EEOC charges that Wal-Mart has not provided it documents after receiving reasonable notice as Wal-Mart is required to do under Section 901 of the decree.

In its motion, the EEOC asks the court to 1) order Wal-Mart to instate class members in accordance with Section 302 of the decree; 2) enjoin Wal-Mart from interfering with the right of class members to instatement; and 3) require Wal-Mart to comply with Section 901 of the Consent Decree by responding to the EEOC's document requests within seven days. (DE 670, Motion at 5).

**II.     ANALYSIS.**

**A.     Section 302.**

The EEOC charges that Wal-Mart has not hired class members to work at DC 6097 as it is required to do under the Consent Decree. The decree establishes a mechanism by which class members will be hired to work at DC 6097. The EEOC is required to provide to Wal-Mart, on a rolling basis, "a list of individuals for instatement, at DC 6097. The list shall include all eligible claimants, as defined in Section 402, who indicate an interest in instatement in a claim form submitted to the Administrator (Section 501)." (DE 669, Consent Decree, § 301).

Section 402 defines an eligible claimant as a person who a) is female; b) sought employment with Wal-Mart at DC 6097 between January 1, 1998 and February 15, 2005 (the "relevant time period") ; c) should not be excluded from employment under exclusionary criteria as determined by EEOC expert Dr. Barnow; and d) was denied unemployment at least once during the relevant time period. (DE 669, Consent Decree, § 402).

It appears that, to date, Wal-Mart has hired one class member. (DE 671, Response at 2 n.1; DE 673, Reply at 2 n.4). The EEOC specifically argues that Wal-Mart should not subject class member to two particular tests that it is currently subjecting them to. The first is a physical abilities test which consists of a "carton lift test," a "sit-up test," and an "arm endurance test." The second test is a Logistics Pre-Employment Assessment which measures certain characteristics of an applicant including safety awareness, integrity, and decision-making skills. (DE 670, Motion at 3 ¶ 9; DE 671, Response at 6). The EEOC asserts that Wal-Mart has used these tests to avoid hiring class members. (DE 670, Motion at 3 ¶ 10).

In resolving this motion, it may be helpful to first note the issues that are *not* before the Court. The EEOC makes clear that, at least in this action, it is not objecting to the appropriateness of or any disparate impact that the tests at issue may have on female applicants as compared to their male counterparts. (DE 673, Reply at 1 nn.1 & 2). Nor is the EEOC arguing that the Consent Decree prohibits Wal-Mart from implementing any new hiring criteria at all after the signing of the decree. In fact, the EEOC explicitly states that "Wal-Mart was to be given the right to add additional objective nondiscriminatory uniformly enforced minimum criteria for hires." (DE 673, Reply at 5).

Nor is the EEOC arguing that the Consent Decree requires Wal-Mart to unconditionally hire all class members who desire to work at the distribution center. The EEOC asserts that Wal-Mart

3

had the right to apply a wide variety of criteria to the class members before hiring them including a minimum age requirement, background checks, drug testing, and reference checks. (DE 673, Reply at 4-5, 10). Likewise, the EEOC asserts that Wal-Mart could refuse to hire class members "with certain types of felonies" or those who were "terminated by their most recent employer." (DE 670, Ex. 1, Mem. at 2). In fact, the EEOC asserts that Wal-Mart could apply any "non-discriminatory objective, uniformly enforced hiring criteria" to the class members. (DE 673, Ex. 4, Eisele Dec.

But the EEOC argues that the Consent Decree prohibits Wal-Mart from applying the physical abilities test and the logistics test to class members. "The interpretation of a consent decree or judgment is question of contractual interpretation." *G.G. Marck and Associates, Inc. v. Peng*, 309 Fed. Appx. 928, 933-34 (6th Cir. 2009)(quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. 1998)). The EEOC points to no provision of the Consent Decree that prohibits Wal-Mart from subjecting class members to these tests.

In fact, Section 302 explicitly provides that Wal-Mart must fill a vacant orderfiller position with an individual on the list provided by the EEOC "subject to criteria that is applicable for all new hires in the orderfiller position." (DE 669, Consent Decree, § 302). Wal-Mart asserts that all new hires are now subject to the two tests at issue and the EEOC does not dispute that. Under the plain language of the decree, Wal-Mart may subject the class members to the new tests because the tests are applied to "all new hires in the orderfiller position."

The EEOC asserts that, when the parties agreed to the language, "subject to the criteria that is applicable for all new hires in the orderfiller position," the parties only intended that Wal-Mart "would have the right to exclude class members who failed to meet uniformly enforced non-discriminatory screening criteria, for example: minimum age, legal right to work in the United

4

States, those with problematic background checks or any other non-discriminatory uniformly enforced hiring criteria." (DE 673, Reply at 4-5). Because the language of the decree is unambiguous, however, this Court cannot look at the parties' purpose or intent. *Central Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981). The "subject to" clause does not limit itself to any particular kind of criteria. It broadly conditions Wal-Mart's obligation to hire class members on any and all criteria that is applicable to all new hires in the orderfiller position. The clause does not limit itself to background checks or any other criteria that the EEOC has identified in its motion as acceptably "minimal."

Further, the EEOC states that it intended to permit Wal-Mart to apply " non-discriminatory uniformly enforced hiring criteria." Nevertheless, the EEOC does not assert that the physical abilities test or the logistics test are not uniformly enforced or that they are discriminatory.

Moreover, the EEOC's argument that the "subject to"clause was only intended to insure that class members "meet certain very minimal qualifications" such as being at least 18, having the legal right to work in the United States and having no felony convictions (DE 670, Ex. 1 Mem. at 2) is illogical. As the EEOC itself concedes, before class members can be placed on the "instatement list," the settlement administrator has already confirmed that "each person met the minimum criteria for hire. . . as determined by EEOC expert Dr. Barnow." (DE 670, Motion at 2, ¶ 7; DE 669, Consent Decree, § 402). In his March 1, 2007 report, Dr. Barnow listed as minimum criteria for employment at DC 6097 that the applicant must be at least 18, have a legal right to work in the United States, and have no felony convictions. (DE 671, Response, Ex. 6, Barnow Report at 19 n.15). There would be no reason for the parties to have provided that Wal-Mart's obligation to hire those on the list was subject to the same criteria that would have prohibited them from being on the

list in the first place.

The EEOC argues that the terms "instatement" and "rightful place hiring" are used in the decree and that this supports its position that Wal-Mart cannot apply the physical abilities test or logistics test to the class members. However, as discussed above, the Consent Decree explicitly states that Wal-Mart's obligation to hire class members is "subject to the criteria that is applicable for all new hires in the orderfiller position." The Consent Decree's simple use of the terms "instatement" or "rightful place hiring" in various areas does not contradict this plain language.

The EEOC argues that, if Wal-Mart can hire class members "subject to criteria that is applicable for all new hires in the orderfiller position," as the decree states, then class members effectively have only the right to *apply* for a job (DE 670, Ex. 1, Mem. at 5). But, there is a critical distinction between applicants and class members under the decree. The decree provides that Wal-Mart *will* fill orderfiller vacancies with an individual on the list provided by the EEOC if the individual meets the criteria applicable to all hew hires in the orderfiller position. Applicants that are not on the list, in contrast, are not assured of being hired even if they do meet the new-hire criteria.

The EEOC argues that subjecting the class members to criteria applicable to all new hires is inconsistent with its own settlement procedures and practices. (DE 673, Reply at 6-7). Again, because the language of the decree is unambiguous, this Court cannot look at the parties' purpose or intent. Further, the EEOC's argument on this point is that it is not its practice to settle class actions in a way which "subjects class members to possible continued discrimination via subjective and unproven testing which may have a disparate impact on women." (DE 673 at 7)(emphasis added). Again, however, as the EEOC itself points out, it makes no allegation in this action that the

tests at issue have a disparate impact on or otherwise discriminate against women. That is not what this motion is about.

The EEOC argues that Wal-Mart never mentioned the addition of the physical abilities test or the Logistics Pre-Employment Assessment during settlement negotiations and this establishes that Wal-Mart believed that class members could not be subject to these tests. Again, the Court is not concerned with Wal-Mart's belief or intention when negotiating the settlement because the decree is unambiguous. Further, even if the Court could consider the fact that Wal-Mart never mentioned the tests during negotiations, this would not establish that Wal-Mart intended that class members could not be subject to them when the plain language of the agreement provides otherwise.

The EEOC argues, alternatively, that if Wal-Mart did intend to subject class members to the tests, then Wal-Mart committed fraud in the settlement negotiations by failing to mention the tests. The EEOC argues that Wal-Mart was obligated to mention the tests partly because it knew that the EEOC was concerned about the disparate impact of such testing. But, Wal-Mart cannot be said to have committed fraud by failing to make sure that all of the EEOC's concerns were met in the Consent Decree. That is the EEOC's job.

**B.     Section 901.**

The next issue is whether Wal-Mart violated the Consent Decree by failing to produce documents after "reasonable notice" by the EEOC.

Wal-Mart asserts that this issue is now moot because it has produced all of the documents the EEOC has requested. The EEOC does not dispute that Wal-Mart has now produced the documents. Nevertheless, in its motion, the EEOC asks the Court to order Wal-Mart to respond to *all* document requests within *seven days*. Accordingly, the EEOC's motion regarding document

7

requests is not moot.

Section 901 provides, in pertinent part, the following:

> The EEOC may review compliance with this decree. As part of such review, the EEOC may inspect the premises, interview employees, and request, examine, and copy documents upon reasonable notice.

(DE 669, Decree § 901).

Thus, so long as the EEOC gives Wal-Mart "reasonable notice," Wal-Mart must permit the EEOC to examine and copy documents. "Reasonable notice" is not defined in the decree. What is "reasonable" generally depends upon the facts and circumstances of each case. Thus, the Court will not set a hard and fast rule on the number of days in which Wal-Mart must respond to every document request and the Court will deny the EEOC's motion to order Wal-Mart to comply with all such requests within seven days.

However, Wal-Mart's assertion that Section 902 governs the time in which it must respond to document requests is clearly wrong. That provision states:

> In the event that the EEOC alleges that a violation of this Decree has occurred, the EEOC shall give notice to Wal-Mart in writing specifically identifying the alleged violation. Wal-Mart will have (45) forty-five days in which to investigate and respond to the allegations.

(DE 669, Decree § 902).

Under its plain language, this provision gives Wal-Mart 45 days to "investigate and respond to" any allegations by the EEOC that Wal-Mart has violated the decree. It does not govern the time in which Wal-Mart must respond to the EEOC's requests for documents. Thus – even if the EEOC simultaneously notifies Wal-Mart of an alleged decree violation and requests documents – Wal-Mart must respond to the document request within a time period that is reasonable.

8

While the Court declines to set a number of days in which Wal-Mart must respond to every EEOC document request, it is difficult to imagine any facts and circumstances under which Wal-Mart would need 45 days to respond to a document request permitted under the decree. In the event of any future EEOC requests for documents, Wal-Mart should be prepared to demonstrate why its response time was "reasonable" given the facts and circumstances of each request.

### III. CONCLUSION.

For all these reasons, the Court hereby ORDERS that Wal-Mart's Motion to Enforce Consent Decree (DE 670) is DENIED.

Dated this 6th day of January, 2011.

Signed By:
*Karen K. Caldwell*  KKC
United States District Judge