UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:01-CV-339-KKC

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, PLAINTIFF,

v. **OPINION AND ORDER**

WAL-MART STORES, INC., DEFENDANT.

\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on the EEOC's Motion for Entry of Final Notice of Distribution. [DE 728]. For the following reasons, the motion is GRANTED.

**I.      Background.**

**A.      The Action.**

In its Complaint, the United States Equal Employment Opportunity Commission (the "EEOC") asserted that, since at least January 1, 1998, Wal-Mart engaged in unlawful employment practices within Wal-Mart Distribution Center No. 6097 in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). (DE 1, Complaint, ¶ 7). That statute prohibits an employer from failing or refusing to hire a woman or from otherwise discriminating against her because of her gender.

The EEOC brought a claim pursuant to Section 707 of Title VII, 42 U.S.C. § 2000e-6, which allows the federal government, through the EEOC, to bring a civil action directly against an employer charging systematic discrimination against a protected group. In these cases, the government must demonstrate that there exists "a pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title VII] ...."

42 U.S.C. § 2000e-6(a). Such an action focuses on whether there exists a "pattern of discriminatory decisionmaking." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984).

This matter was set for trial to begin March 1, 2010. However, on February 26, 2010, the parties jointly moved for entry of a Consent Decree which they represented was intended to and did resolve all matters in dispute between them. [DE 666]. The Court granted that motion, entered the Consent Decree [DE 669], and canceled the jury trial. Pursuant to Section 1102 of the decree, this Court retained jurisdiction of this action for five years solely to enforce the Consent Decree.

**B.    The Consent Decree.**

Pursuant to the Consent Decree, Wal-Mart paid $11,700,000 into a Settlement Fund. The fund was established and administered by a third-party settlement claims administrator and is to be distributed to eligible class members in a manner to be determined by the EEOC.

Pursuant to this Court's October 6, 2011 Order [DE 726], the Consent Decree was later modified to require Wal-Mart to pay an additional $120,000 into the fund because, after the first Notice of Proposed Distribution was mailed to class members, Wal-Mart produced to the EEOC additional applicant materials which caused the awards to some class members to be increased. [DE 726]. The $120,000 represented the total amount of increased awards caused by Wal-Mart's late production. For a short period of time, the fund was interest bearing and accrued interest of $23,514.37.

**C.    Definition of Eligible Class Member.**

The EEOC identified 1378 eligible class members based upon a report of its

statistical expert, Dr. Burt S. Barnow, who was hired by the EEOC to identify applicants during the relevant time period who had some probability of being hired. The relevant time period was between January 1, 1998 and February 15, 2005.

Based on Dr. Barnow's report, the EEOC defined an eligible class member as a female who applied for a job at the distribution center during the relevant time period who met the following criteria:

- was at least 18 at the time she applied for the job;

- was not hired for at least one job for which she submitted an application;

- had at least one application that was not labeled by Wal-Mart a "no-call, no-show" or "could not be reached;" and

- if the application was submitted after January 1, 2002, the applicant must have applied for at least one non-clerical job (this is because no one was hired who applied for clerical-only positions after January 1, 2002) [DE 731, Tr. at 29].

Applicants who met these criteria were determined to be eligible class members. To determine which applicants met these criteria, the Settlement Administrator used the documentation that Wal-Mart supplied in applicant files.

**D.     Claim Forms.**

After determining the eligible class members, the Settlement Administrator sent a claim form to each class member. [DE 31, Tr. at 45, 64]. The claim form directed that, in order to participate in the settlement, the form must be returned to the Settlement Administrator postmarked by May 12, 2010. [DE 730, Ex. 692A]. When each claim form arrived at the Settlement Administrator's offices, the form and the envelope were date-stamped. [DE 731, Tr. at 48].

### E. Determining Likelihood of Being Hired.

The EEOC established award categories based upon the class members' likelihood of being hired as determined by Dr. Barnow's report. Dr. Barnow concluded that, to be eligible for hire, an applicant at the distribution center had to receive approvals by three managers. This was the only characteristic in common for all hires. An applicant was considered to have obtained management approval if her file contained a written document indicating that she was interviewed and received a "yes" from a manager, meaning she was approved for a following interview. [DE 731, Tr. at 32].

The only exception to this interview requirement was for transfer applicants who filed a transfer application. These applicants did not have to go through three interviews before being hired.

Dr. Barnow also concluded that, between 1998 and 2001, an applicant was less likely to be hired if she applied for only white-collar or clerical positions. After 2001, Dr. Barnow concluded, that an applicant had no likelihood of being hired if she applied for only clerical work.

Dr. Barnow concluded that applicants with negative references were less likely to be hired. Wal-Mart only checked references after the second interview. Thus, if an applicant had two interviews but received a bad reference after the second interview, they were less likely to be hired.

### F. Award Categories.

The EEOC determined that applicants with a greater likelihood of being hired should receive greater monetary awards from the Settlement Fund. [DE 730, Power point; DE 731, Tr. at 39]. The EEOC also determined that women who progressed the furthest

in the hiring process had persisted in attempting to be hired despite suffering discrimination and being rejected.

The EEOC established six award categories which are detailed in the Final Notice of Distribution and is attached as Exhibit 1 to the EEOC's motion. [DE 728]. The award categories depended upon such factors as the number of interviews an applicant had, whether the applicant indicated she would accept a warehouse, order-filler or heavy-lifting position and whether she had negative references.

The categories are designated Category A-1, A-2, B-1, B-2, C-1, and C-2. Applicants in Category A-1 were considered to have the greatest likelihood of being hired and receive the largest monetary award ($42,000). Applicants in Category C-2 were considered to have the least likelihood of being hired and receive the smallest monetary award ($2,000).

The Settlement Administrator placed eligible claimants into one of these six categories based upon information contained in the class members' application packets produced by Wal-Mart. If class members had multiple applications, the application that placed them in the highest category was used.

### G.   Incentive Payments.

In addition, the EEOC determined that incentive payments should be paid to those class members who assisted in the litigation in certain defined ways with those who provided the greatest assistance receiving the highest incentive amounts. The EEOC established four categories of assistance levels and assigned an incentive payment amount to each category.

The categories are detailed in the Final Notice of Distribution attached as Exhibit

1 to the EEOC's motion. [DE 728]. The categories are designated Class 1 to 3 and "Charging Party Incentive." The Charging Party Incentive category consists of only the class member who filed the initial charge with the EEOC which formed the basis for this lawsuit. She receives the highest incentive payment of $13,500. Class 1 to Class 3 members receive incentive payments ranging from $10,500 to $3,500.

### H. Notice of Proposed Distribution and Objections.

Pursuant to Section 601 of the Consent Decree, the EEOC filed with the Court a Notice of Proposed Distribution which the Court signed. [DE 679]. The Settlement Administrator mailed the notice to all class members. [DE 731 at 45-46]. The notice explained how the award categories and incentive award classes were determined. It also notified each class member of her individual award determination and provided instructions for objecting to the proposed distribution. The notice also included a table showing the number of claimants assigned to each award category and incentive class and the monetary awards for each award category and incentive class.

The EEOC received a total of 134 objections to the proposed distribution [DE 730, Objections Checklist, Alpha. Objections Checklist, Objections 1-119, 689A-I, 692A-C, 701A-C]. After receiving the objections, the Settlement Administrator reviewed applicant files and the EEOC asked Wal-Mart to search for additional applicant materials. In some instances, Wal-Mart produced additional applicant materials that it had overlooked in the first production. Based upon the additional material produced by Wal-Mart, the Settlement Administrator recommended certain revisions to the proposed distribution. [DE 731, Tr. at 50-51; DE 739, Ex. 202].

The EEOC then filed a Motion for Entry of Final Notice of Distribution. [DE

6

728]. The Revised Summary of Claimants by Category and Class and Recommended Award Amounts attached to the motion include the changes recommended by the Settlement Administrator after the objections were filed.

## I. Fairness Hearing.

The Court conducted a day-long Fairness Hearing on October 25, 2011. The Settlement Administrator testified that, with the suggested revisions to the distribution, $18,514.47 would remain in the fund. She recommended that amount be allocated pro rata to the class members unless the Court determined that additional revisions be made to the proposed distribution. [DE 731, Tr. at 56-57].

The EEOC's paralegal testified that, of the 134 written objections, nine individuals had indicated to the EEOC prior to the Fairness Hearing that they wished to withdraw their objections. [DE 731, Tr. at 65-67, DE 730, Ex. 207]. Four additional individuals representing six objections[1] withdrew those objections at the hearing [DE 731, Tr. at 79, 85, 94, 130], bringing the total number of objections down to 119.

At the hearing, the Court gave all those in attendance an opportunity to be heard. Approximately 27 women who had filed written objections spoke in support of their objections. An additional five women who had not filed written objections spoke at the hearing in opposition to the proposed distribution. [DE 731, Tr. at 185]. In addition, the Settlement Administrator and the EEOC paralegal specialist provided relevant testimony.

## II. Standard of Review.

Voluntary settlements of class action disputes are favored, particularly in Title VII cases where Congress has expressed its preference for settlement. *EEOC v. Hiram*

---

[1] One objector filed three separate objections but withdrew all the objections at the hearing. [DE 731, Tr. at 94; DE 730, Alpha. Objections].

*Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985). Before a court can approve a class action settlement, it must determine that the settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). While actions brought by the EEOC are not technically governed by Federal Rule of Civil Procedure 23, the majority of courts analyze settlements of EEOC actions under the same standard. *See Binker v. Pennsylvania*, 977 F.2d 738, 747-48 (3d Cir. 1992).

Accordingly, prior to approving the proposed distribution in this case, the Court will analyze it to determine if it is fair, reasonable, and adequate. The Sixth Circuit has identified seven factors that should aid a court in its determination of whether a class action settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Intl. Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

"In considering a proposed class action settlement, a court may either approve or disapprove of the settlement; it may not rewrite the parties' agreement." *E.E.O.C. v. Renhill Group, Inc.*, No. 1:08-cv-82-TS, 2009 WL 1605159, at *6 (N.D. Ind. June 5, 2009)(quoting *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 315 (7th Cir. 1980)). "A court may not deny approval of a consent decree unless it is unfair, unreasonable, or inadequate." *Id.* (quoting *Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985)(internal quotations omitted)).

"Objections based purely upon individual claims of loss do not warrant

disapproval of the proposed settlement." *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1335 (E.D. Mo. 1995) (citing *E.E.O.C. v. Pennsylvania*, 772 F. Supp. 217, 220 (M.D. Pa. 1991)). "In assessing the fairness of a settlement, the Court's role is not to make a de novo evaluation of whether the measures applied to all claimants provide each individual with a satisfactory recovery. Rather, the criteria or methodology employed by the litigants is sufficient if its terms, when applied to the entire group of individuals represented, appear reasonable." *Id*.

### A. Individual Objections.

In analyzing the fairness, reasonableness, and adequacy of the proposed distribution, the Court will first consider the individual objections to it.

The written and oral objections to the proposed distribution in this action largely fall into four groups. In the first group are those objectors who assert that their individual proposed award is insufficient because the Wal-Mart applicant files were incorrect or incomplete. These objectors were either excluded from the class based upon the information in their applicant files or were placed in a category with a lower award than the objectors claim they should have been. For example, many of these objectors argued that they actually passed one or more interviews but were placed in one of the categories which consists of those applicants who passed no interviews.

For each of these objectors, the Settlement Administrator conducted a review of the objections prior to the Fairness Hearing and completed an Objection Review Summary Sheet explaining the basis for the individual's category placement and, where warranted, the basis for any revision to the category placement. The EEOC submitted the Objection Review Summary Sheets to the Court prior to the hearing.

The Court finds that the EEOC reasonably relied on the Wal-Mart applicant files in determining class membership and the award category of each claimant. Wal-Mart had no incentive to purposely alter the files. Regardless of the amounts awarded to individual claimants, the amount Wal-Mart was obligated to pay into the Settlement Fund would not change. Nor did the EEOC or the Settlement Administrator have any incentive to intentionally alter or incorrectly account for the information in the files.

Due to human error, the applicant files may not be accurate for each claimant. However, individual memories can also be in error. This is especially true because the events at issue occurred between 1998 and 2005. Accordingly, it was reasonable for the EEOC to rely on written materials when assigning claimants to categories.

The second group of objectors consists of those objectors who assert that the EEOC's method of distribution was unfair and that all claimants should have instead received an equal distribution from the Settlement Fund. The Court finds the EEOC's method of distribution was reasonable. As the EEOC explained at the Fairness Hearing, claimants who were considered to have the greatest likelihood of being hired as determined by the EEOC's statistical analysis received the largest monetary award. Applicants considered to have the least likelihood of being hired received the smallest monetary award.

In other words, the EEOC proposes to distribute the Settlement Fund on the basis of the strength of the applicant's case against Wal-Mart. Applicants with the strongest potential cases as determined by the EEOC investigation received a higher award than those who would have had a more difficult time convincing a jury that they were not hired because of gender discrimination.

Another indication that the proposed distribution is fair and reasonable is that Dr. Barnow statistically determined that, absent any discrimination, Wal-Mart would have hired 229 more women during the relevant time period than it did. That number is very close to the 232 class members that the EEOC placed in categories A or B because they had characteristics which Dr. Barnow determined made applicants most likely to be hired.

The third category of objectors consists of those whose claims were denied because they failed to submit a claim form or failed to do so in a timely manner. The claim form stated in bold print "**Claim Form must be postmarked by May 12, 2010**." It also clearly stated in bold print:

> **Please note that you will not be considered for inclusion in the settlement if: (1) this form is not postmarked by May 12, 2010 or (2) your address changes and you do not notify the Settlement Administrator at the address above or by calling (877) 644-0335.**

[DE 733, Ex. 692A].

The Settlement Administrator sent a claim form to each class member. [DE 731, Tr. at 45, 64]. At the Fairness Hearing, the Settlement Administrator explained that she ran all addresses through the U.S. Postal Service national change-of-address database to capture any forwarding addresses put into place in the last four years. If the claim form was returned as undeliverable, the Settlement Administrator used a tracing service to obtain a different address for the individual. If the tracing service produced a new address, the Settlement Administrator remailed the claim form to the new address. [DE 731, Tr. at 47-48]. When the claim form arrived at the Settlement Administrator's offices, the form and the envelope were date-stamped. [DE 731, Tr. at 48].

The Court finds this procedure was fair, reasonable, and adequate to determine if

class members wished to be included in the settlement. Further, in the interest of finality, it was fair and reasonable to exclude individuals from the settlement if they failed to return a claim form indicating their desire to be included or if they submitted a claim form in an untimely manner.

The fourth category of objectors consists of those who object to the incentive payments. The Sixth Circuit has observed that incentive awards may be appropriate in some cases, but has not specified the appropriate circumstances. *Hadix v. Johnson*, 322 F.3d 895, 897-98 (6th Cir. 2003). District courts approve incentive awards for individuals who have earned them by protecting the rights of the class members, assuming any direct or indirect financial risk, or expending time and effort pursuing the litigation. *Enterprise Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240, 250 (S.D. Ohio 1991). The EEOC has awarded incentive awards in this case based upon the level of assistance provided by class members. The Court finds that is fair and reasonable. Given the length of this litigation and the time required to provide deposition testimony and other information during discovery and to prepare for trial, the Court believes the amount of the incentive awards are fair and reasonable.

For each individual who objected to her category placement, the EEOC conducted a review of the individual's placement prior to the Fairness Hearing and submitted a review summary sheet to the Court explaining the basis for the individual's category placement.

At the Fairness Hearing, some individuals argued that the EEOC had not awarded them incentive payments even though they were deposed. However, the EEOC paralegal testified that these individuals were deposed by Wal-Mart because Wal-Mart believed

their testimony would be helpful to Wal-Mart's case. These individuals were not identified by the EEOC as individuals having information helpful to the EEOC. It is fair and reasonable for the EEOC to award incentive payments to only those individuals who assisted the EEOC in its litigation.

### B. Analysis of Proposed Distribution for Fairness, Reasonableness, and Adequacy.

In sum, the Court does not find that any of the individual objections to the proposed distribution require the Court to reject the proposal. As to the seven factors that the Sixth Circuit has indicated a Court should consider in analyzing a class action settlement, the Court first addresses the risk of fraud or collusion.

This case was filed more than 10 years ago. The parties have engaged in extensive motion practice and discovery. There is no indication that there has been any fraud or collusion at any point in this litigation including the negotiation of the settlement. Further, the only indication is that the Consent Decree was the product of arm's-length, good-faith settlement negotiations. Accordingly, the evidence before the Court indicates that the risk of collusion among counsel is nonexistent.

As to the second factor — the complexity, expense, and likely duration of the litigation — the Court must weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). The Court concludes that this factor weighs in favor of finding the settlement fair and reasonable. A trial of this matter would have been complex and factually intensive with regards to both liability and damages. A resolution of these issues by a jury would have constituted a significant risk for the class members.

Further, there is a very real potential that most of the individual monetary awards in this action would have been zero at trial. "[I]n so-called 'pattern or practice cases,' if the plaintiff can establish 'that racial discrimination was the company's standard operating procedure,' the burden of proof shifts to the defendant to show that in individual cases the hiring decision was not due to the discriminatory policy but to some other, legitimate consideration." *E.E.O.C. v. United Ass'n of Journeymen*, 235 F.3d 244, 251 (6th Cir. 2000) (quoting *Lujan v. Franklin County Bd. of Educ.*, 766 F.2d 917, 928-29 (6th Cir. 1985)).

Wal-Mart may well have met this burden for a large number of the individual claimants. The EEOC statistical expert never asserted that every member of the class would have been hired if there had been no discrimination in the hiring process. Instead, his analysis showed that that the vast majority of female applicants would not have been hired if there had been no discrimination in the hiring process. The statistical expert determined that the likelihood of getting hired at the distribution center during the relevant time period was extremely low regardless of whether the applicant was male or female. He determined that less than one percent of female applicants — or 229 of the almost 5000 female applicants during the relevant time period — who were not hired would have been hired even if there were no discrimination in the hiring process. Considering the risks of a smaller recovery, or none at all, after an expensive and protracted trial and appeal, the proposed distribution is fair, reasonable and adequate.

As to the third factor — the amount of discovery engaged in by the parties — the parties engaged in extensive and complete discovery in this action which permitted them to frankly evaluate the merits of and risks inherent in their respective cases to determine

an appropriate overall settlement amount and to allow the EEOC to fairly and adequately determine an allocation of that amount to the eligible claimants.

As to the fourth factor — the likelihood of success on the merits — the factual complexity of the case makes it difficult to gauge the likelihood of the EEOC's success at trial. The EEOC's likelihood of success on the merits was legitimately possible, but the Court expresses no opinion as to whether it was probable. Accordingly, the proposed distribution is a reasonable and appropriate tradeoff for the elimination of the risk associated with a trial of this action.

As to the fifth factor — the opinions of class counsel and class representatives — counsel for the EEOC and Wal-Mart have extensive experience in matters such as this. Their approval of the proposed distribution weighs in favor of the Court's approval of it. The Charging Party has voiced no opposition.

As to the sixth factor — the reaction of absent class members — it is appropriate to consider the reaction of the class members as a whole to the proposed settlement. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "A certain number of . . . objections are to be expected in a class action …. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 527 (E.D. Mich. 2003). In this action, the class consists of approximately 1378 members. There were a total of only 119 objections. The overwhelming majority of the class has no objection to the terms of proposed distribution. Further, as discussed above, the Court does not find these individual objections warrant disapproval of the proposed distribution.

Lastly, the Court considers the public interest. As noted, there is a federal policy

favoring settlement of class actions. There is no basis for not adhering to that policy in this matter. The Court therefore finds that the public interest warrants approval of the proposed distribution.

**III.   Conclusion.**

For all these reasons, the Court hereby FINDS that the EEOC's proposed distribution of the Settlement Fund is fair, reasonable, and adequate. Accordingly, the Court hereby ORDERS as follows:

1)   the EEOC's Motion for Entry of Final Notice of Distribution [DE 728] is GRANTED;

2)   The Settlement Fund SHALL BE DISTRIBUTED as provided in the Recommended Award Amounts attached as Exhibit 4 to the EEOC's motion [DE 728];

3)   Any amount remaining in the fund SHALL BE DISTRIBUTED pro rata to the class members receiving a distribution from the Settlement Fund as provided in the Recommended Award Amounts attached as Exhibit 4 to the EEOC's motion;

4)   The EEOC SHALL cause this Opinion and Order to be mailed to all class members; and

5)   This Order is Final and Appealable.

Dated this 20th day of December, 2011.



Signed By:
*Karen K. Caldwell*
United States District Judge